## Case No. 17,303.

### WAYNE v. HOLMES.

[1 Bond, 27; [2] 2 Fish. Pat. Cas. 20.]

Circuit Court, S. D. Ohio. April Term, 1856.

PATENTS—SUFFICIENCY OF SPECIFICATIONS—VAGUENESS — INVENTION AND NOVELTY — BURDEN OF PROOF—UNSUCCESSFUL EXPERIMENTS—DAMAGES FOR INFRINGEMENT—WASH-BOARDS.

1. The requirement of the statute, in reference to certainty and definiteness in the directions for constructing a machine for which a patent is sought, has in view two distinct objects. The one is, that the public may know precisely what the invention is; the other, that, upon the expiration of the patent, they may have an unerring guide in the specification or record in the patent office in the construction of the patented machine.

[Cited in Tannage Patent Co. v. Zahn, 66 Fed. 989.]

2. In a patent for an improvement in the manufacture of wash-boards from wood and metal combined, by sharpening the cutting edges of the zinc, or other metal, and incising the edges by pressure into the frame, it is not a material defect in the specification that it does not give the precise angle of the cutting edge, or describe the mode of applying the pressure, or the depth of the incision.

3. If competent mechanics, skilled in the business, testify there would be no difficulty in constructing the machine from the specification and drawing, the assumption of vagueness and uncertainty in the description is repelled, unless it clearly arises from the language used by the patentee.

4. The originality and novelty of the patentee's invention being denied in this case, it is incumbent on the defendant to rebut the presumptions of the patent by proof that it was not the invention of the patentee, or was previously known and in use.

[Cited in Johnson v. McCabe, 37 Ind. 539.]

5. If the jury find that the improvement patented was not new and original with the patentee, the patent is a nullity.

6. Evidence that others, prior to the date of the patentee's application, have made trials and experiments on the principle of his patent, which were not successfully carried out, will not defeat the patent.

7. If the jury are satisfied that the patentee, or the plaintiff as his assignee, has surrendered or abandoned the invention to the public, there can be no recovery for an infringement.

8. If the jury find the patented improvement is new and original, and that the defendant has infringed, their verdict will be the actual damage which the plaintiff, as assignee of the patent has sustained by such infringement; and this is to be ascertained by the number of wash-boards made on this principle, and the increased profit to the defendant arising from the use of the invention.

9. In computing the damages, the jury should exclude from their computations the increased facilities in making wash-boards, due to inventions of machinery since the patent, or its assignment to the plaintiff.

This was an action on the case [by Joseph W. Wayne against James B. Holmes.] tried by Judge Leavitt and a jury, to recover damages for the alleged infringement of letters patent for an improvement in wash-boards, granted to Orin Rice, October 30, 1849, and assigned to plaintiff, January 15, 1851.

The claim of the patent was as follows: "Having thus fully described the nature and effect of my invention, I wish it to be distinctly understood that I do not claim any of the several parts composing a wash-board made of sheet metal and wood; but that which I do claim as my new and useful improvement in the mode of manufacturing such wash-boards, and for which I ask letters patent, is incising with the edges of the sheet metal (prepared and crimped as described), the legs, or the legs and body board by the suitable application of pressure thereto, thereby fitting and attaching the one to the·other at one operation, and with a comparatively water-tight joint."

Miner & Oliver and T. Ewing, for plaintiff.
C. D. Coffin, for defendant.

LEAVITT, District Judge (charging jury): This suit is brought to recover damages for an alleged infringement of the exclusive right of the plaintiff to make and vend the improved wash-board, patented to Orin Rice, October 30, 1849, and assigned by Rice to the plaintiff January 15, 1851.

It is not denied by the defendant that he has made and sold these improved wash-boards; but he insists that the patent is invalid; first, on the ground of the uncertainty and insufficiency of the specification affixed to, and constituting a ·part of, the patent; and, second, that Rice was not the original and first inventor of the improvement patented to him, and that the same was known and in use prior to the date of his application for a patent.

The question arising on the first ground stated is a question of law for the decision of the court. It involves this inquiry, whether the patentee has made known, with sufficient certainty and precision, what his invention is?

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

If he has failed to do this, it is clear that his patent can not be sustained, and this action must fail. A patent right is the creature of the statute, and has no validity unless the statute has been substantially complied with. The sixth section of the act of congress of July 4, 1836 [5 Stat. 119], now in force, provides that "before any inventor shall receive a patent for any such new invention or discovery, he shall deliver a written description of his invention or discovery, and of the manner and process of making, constructing, using, and compounding the same, in such full, clear, and exact terms, avoiding unnecessary prolixity, as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, or use the same; and in case of any machine, he shall fully explain the principle and the several modes in which he has contemplated the application of that principle, or character, by which it may be distinguished from other inventions."

In his specification, the patentee describes his improvement as follows: "The nature of my invention consists in the mode of manufacturing wash-boards out of metal and wood combined, by so preparing the sheet of zinc, or other metal, that by sharpening two parallel edges, and crimping the sheets from one of these edges to the other, I am enabled, by using pressure, to incise and fasten, to the wooden sides, the sheet thus prepared." In a subsequent part of the specification, the mode of constructing the wash-board is more fully described, in the following words: "The process by which I effect these improvements consists in taking a sheet of zinc, dividing it into strips of the width desired, and sharpening to a cutting edge the sides that are to incise the wooden standard of the frame, and thereby attach the one to the other, when they are properly brought together; so that by the application of pressure, the sheet is buried to a suitable extent, not only fast and firmly to the wood, but so aptly that it forms a water tight joint," etc. And it is also stated, that "the metal and wood being thus exactly and instantly adapted, fitted, and closely joined the one to the other, by machinery expressly prepared for the purpose, the article can be furnished to the market at fifty per cent. less cost." The specification refers to drawings, which accompany it, and which exhibit minutely the different parts of the wash-board, and the method of its construction.

It is objected to this specification, that it does not comply with the requisites of the statute in not stating fully the patented invention, and the mode of the construction of the wash-board. The specific points taken by the counsel for the defendant are, that the specification is defective in not setting out the method of sharpening the edges of the zinc, and the precise angle of the sharpened edge; and also, in not stating the depth of the incision required, or the method of applying the pressure by which the zinc is incised. If it be true, as in-

sisted, that the patentee has failed to describe any material part of the process of making a washboard, on his improved plan, necessary to the full benefit of his invention, and this omission is apparent from the specification, it is fatal to the patent. In giving a construction to this specification, it will be obviously proper that the whole should be taken together; and, if from the entire instrument, the true nature of the improvement, with the mode of carrying it out, is disclosed, it will be deemed to be a substantial compliance with the statute. Another rule is equally obvious, namely, that in the description of the improvement, and the directions for constructing the improved machine, it is not necessary to state those matters, which it is apparent would be proper or indispensable in its structure. This would involve what the statute designates as "unnecessary prolixity," which is to be avoided in a specification. Applying these rules to this specification, I have failed to perceive any such omissions as will invalidate this patent. It is expressly stated that the zinc is to be sharpened to a "cutting edge;" and it was not necessary to describe the process by which the zinc was to be thus cut, or to state the precise angle of the cutting edge. These would suggest themselves readily to any mechanic of ordinary intelligence in the construction of the wash-board. There are many modes by which these ends could be accomplished with equal ease and utility; but no particular mode being claimed as a part of the discovery of the patentee, it was not essential to describe any. The same remark applies to the depth of the incision required. The specification directs that the sharpened edges of the zinc are to be buried to "a suitable extent" in the sides or legs of the board. A mechanic could not fail to know, that for the purpose of self-incision, the sharpened edge must extend but a short distance beyond the board on which the plate of zinc is fixed. It is equally clear, that it was not necessary to describe the precise mode of applying the pressure by which the zinc is forced into the wood, and the different parts of the board fastened together. In the first part of the specification, the patentee says, the use of pressure, to incise and fasten the zinc to the sides, is necessary; and in the directions for making the wash-board, in a subsequent part of the specification, it is distinctly stated, that the application of pressure is needed for this purpose, and reference is made to a machine that might be constructed to accomplish the result. But clearly, it was not necessary to state the precise method of applying this pressure, or the principle in mechanics to be used in its application. Any kind of pressure, applied in any way, would accomplish the desired purpose; and this may well be presumed to have been known to the patentee, or to any mechanic, who might be called on to construct the improved wash-board. I can not see, therefore, that there is any such omission, or vagueness in the specification, apparent on its face, as requires the court to pronounce it a nullity. It is, however, a question for the de-

cision of the jury, upon the evidence before them, whether it describes the mode of constructing the wash-board with such clearness and precision, that a mechanic of reasonable intelligence, and skill in that branch of art, could carry the invention into practice. This is a question of fact, and must be settled by the judgment of persons having practical knowledge in such matters. The requirement of the statute, in reference to certainty and definiteness in the directions for constructing a machine for which a patent is sought, has in view two distinct objects. The first is, that the public may know precisely what the invention is; and the other, that upon the expiration of the patent, they may have an unerring guide in the construction of the patented machine, from the specification on record in the patent office.

Several witnessses have beeen inquired of whether, from the specification and the accompanying drawings, the improved wash-board, patented by Rice, could be constructed? They have all replied affirmatively to this question. One witness, a practical machinist, states that he had no difficulty in making a wash-board from the directions contained in the specification, in connection with the drawings. He says explicitly, that there is no necessity that the specification should state the mode of cutting or sharpening the zinc, or of applying the pressure for the incision of the edges of the zinc. No testimony has been offered by the defendant to prove that there is any difficulty in making the board from the directions given in the specification.

The next inquiry relates to the novelty and originality of this improvement. As already stated, one of the grounds of defense in this case is, that the improvement patented by Rice was not new, but was known and in use before the date of his application for a patent. If this defense is sustained by the evidence, the patent to Rice has no validity, and no one is responsible for the use of the improvement. The statute requires that the patentee should be the original and first inventor. This implies that the improvement patented was the discovery of the patentee, and not borrowed from another; and also that it was not before known or in use. In a word, it must have been original with the patentee, and not known to others. It may be remarked here, that there is a legal presumption in favor of the originality of a patented invention or discovery arising from the patent. As preliminary to its emanation, it is required that the applicant shall make oath that he is the original and, so far as he knows, the first inventor. And, in the absence of evidence to negative this presumption, it will be sufficient to sustain the patent. In the present case, the plaintiff has proved the originality of the invention by Rice, the patentee. Having assigned the patent, he has now no interest in it, and is a competent witness. It is the province of the jury to determine as to the credit due to his evidence. He states that the improvement in the wash-board for which he obtained a patent, was his own in-

vention. And there are some facts in proof, by other witnesses, in relation to his declarations and conduct, anterior to his application for the patent, tending to prove that the invention was original with Rice.

The novelty of the invention presents the more important and difficult question for the decision of the jury. As before intimated, under the patent laws, if the patented invention was known or in use, or something substantially and essentially like it, prior to the application for a patent, the proof of the fact is an answer to an action for an infringement. In such case, the patent is void, and no action can be sustained for its violation. The defendant has introduced several witnesses to prove the prior use and knowledge of wash-boards, made on the self-incising plan, patented by Rice. I shall not detain the jury by referring minutely to the statements of these witnesses. Mr. Gilson testifies that he has been engaged in the business of manufacturing wash-boards, at different places, since the year 1836; and that, as early as 1839, he made them on the plan of incision by mechanical pressure. It is not clear, however, that this witness made any without, at least, the partial use of grooves, in the sides and legs of the board. He also states that, from the low rate at which the boards were made, upon Rice's plan, he was compelled to abandon the business, when they were introduced to the public. Another witness, Barrett, states that he saw wash-boards in the state of Maine, some fifteen years since, made by sharpening the zinc, and forcing it into the sides by means of a clamp. The witness, Janes, testifies in substance that, in 1846, being in the employment of Mr. Babcock, at Cincinnati, he made from six to ten boards by sharpening the edges of the zinc and forcing them in by pressure. In an affidavit made by Janes in 1849, which is admitted in evidence, he states that after leaving Babcock's employment, he made three wash-boards on the same plan, and gives the names of the persons for whom they were made. From the testimony of Mr. Bailey, a witness for the plaintiff, it appears that two of these boards have been found, and, upon examination, it is ascertained they were not made on the plan of self-incision, but that the edges of the zinc were let in by mortises. Janes states in his deposition in this case, and which is before the jury, that he was under a mistake in swearing, in his affidavit, that the three boards made, above referred to, were on the self-incising plan. He, however, repeats the statement that those made by him while in Mr. Babcock's employment were made in this way. The witness, Babcock, corroborates, to some extent, the testimony of Janes, in relation to the boards made for him. He did not see Janes in the act of making the boards, nor did he take them to pieces to ascertain how they were made; but has

no doubt they were made on the self-incising plan. He says he did not like these boards, and no others were made for him in that way. On the part of the plaintiff, it is in evidence, by several witnesses who have dealt for many years extensively in wash-boards, both in the East and in the West, that they never saw or knew of any on the self-incising plan till Rice's were introduced into the market.

Such is the summary of the evidence on the question of the novelty of this invention. It will be for the jury to say which way the scale preponderates. They must be reasonably certain that the invention patented by Rice was known before he applied for a patent, to justify a verdict which will invalidate it. And proof of prior experiments on the principle of this invention, if not carried on to completion, does not make out the fact of prior knowledge or use, within the meaning of the patent laws. The machine or structure alleged to be similar to that patented, must have been so far perfected as to be of practical utility. And if abandoned after experimental trials as useless, a presumption would arise that the alleged invention was not identical with one subsequently patented to another person, the merits and utility of which are proved by its general use and admitted superiority over all others.

Every invention, under our patent laws, must be "useful," as well as original and new. The patent implies that the invention is of some utility, but this may be rebutted by evidence that it is frivolous and of no practical value. In this case, it would seem, from the evidence, there can be no doubt of the utility of the invention. Although simple in its character, and not importing the exercise of a high degree of mechanical or ·scientific talent, it is nevertheless useful, and within the scope and policy of the patent laws. It is clearly proved that the wash-board, made pursuant to this patent, is superior to any before in use; and for this reason. and on account of the reduced price at which it can be made, it has superseded all others. An intelligent witness has stated that, without the aid of the machine for pressing the zinc into the sides and nailing the boards, patented since the date of Rice's patent, his invention has the advantage over any other in the proportion of twelve to one. The same witness testifies that with the aid of the machine referred to, with steam power, one hundred dozen wash-boards can be made in a day, at an actual cost of one dollar and sixty-eight cents the dozen.

It is proper here to notice, that it is insisted by the defendant's counsel, as a ground of defense in this action, that the plaintiff, as the assignee of the patent, has virtually abandoned all his rights under it, and can not, therefore. recover damages for an infringement. If this position is sustained by the evidence, it is clearly a good defense to this action. The owner of a patent has an undoubted right to surrender it to public use. And if the evidence satisfies the jury that there has been such surrender, the plaintiff can not recover. The evidence on this point is briefly this: That, owing to doubts as to the validity of the patent, a number of persons in Cincinnati were engaged in the manufacture of wash-boards on the plan of Rice's improvement; and that shortly prior to the commencement of this suit, and when it was in contemplation, a meeting was held of all these persons, including the plaintiff. After conference on the subject of the price of the wash-board, an agreement was entered into and signed by all the parties, to the effect that thereafter no one would sell the wash-board below a certain price agreed on, and stated. This agreement was published in one of the city papers. This, it is urged in argument, is a virtual consent, on the part of the plaintiff, that others should make these improved wash-boards, and a waiver of all claims for the infringement of the patent. In reference to the conference and agreement adverted to, the witness, Bailey, states that he was then interested in the ·patent, with the plaintiff, and was present at the meeting, and a party to the agreement as to prices to be asked for the wash-boards. He testifies that the sole object of the proceeding was to prevent the prices from running down so low as to exclude any profit from the manufacture of the wash-boards; and moreover, it was distinctly stated, and so understood by the parties, that the plaintiff, in signing the paper referred to, waived no right to which he was entitled as the assignee of the patent. If the jury give credit to this testimony, there is clearly nothing in this transaction justifying the conclusion that the plaintiff has abandoned any right or claim which vested in him under the patent.

If the jury find for the plaintiff on the points to which their attention has been directed, it will be their duty to assess such damages as he may be entitled to recover. An infringement of the exclusive right of a patentee, or his assignee, implies a right to sue for and recover damages for the injury. The general rule of damages is the amount of profits made by the person infringing the patent from the unlawful use of the improvement. On the theory of the patent laws, this measures the loss sustained by the owner of the patent. There may be circumstances of aggravation attending the infringement, that will justify a jury in returning damages beyond the amount of profit derived from it: but there are no facts in this case requiring the application of this rule. In the progress of the trial, the plaintiff offered to prove the aggregate of profit made by all the manufacturers of the improved wash-board in violation of his

exclusive right, insisting that the defendant was liable for a pro rata share of this entire profit, but the court excluded this evidence from the jury as not furnishing a proper rule of damages. The jury will therefore take into consideration the evidence of the number of wash-boards made by the defendant, and the profit derived from such manufacture; and this will be the proper basis of their verdict, if they find the plaintiff is entitled to damages. It was insisted by the defendant, that in estimating the amount of the damages, the jury should exclude from their consideration the increased facilities for making the wash-board, due to the machines invented since the date of Rice's patent for pressing and nailing the wash-board. It is in evidence that there are two of these in use, constructed on somewhat different mechanical principles, the effect of which is greatly to expedite the process of manufacturing these wash-boards. The specification connected with Rice's patent expressly refers to a machine to be used for the purpose indicated; and it seems clear, that in estimating the profit to the manufacturer derived from Rice's improvement, reference may be had to the use of such a machine.

The jury found a verdict for the plaintiff, assessing the damages at $500.

[For another case involving this patent, see Wayne v. Winter, Case No. 17,304.]